CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED
AUG 0 9 2005
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| DELORES POWELL, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>JOANNE B. BARNHART, )<br>COMMISSIONER OF SOCIAL SECURITY, )<br>    Defendant. ) | Case No. 6:04-CV-00063<br><br>By: Hon. Michael F. Urbanski<br>    United States Magistrate Judge |

### MEMORANDUM OPINION

Plaintiff Delores Powell brought this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of Social Security denying her claim for Social Security Income ("SSI") under Title XIV of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.

Plaintiff claims that she is disabled under 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05C. Under this listing, plaintiff was required to establish that she had an I.Q. of less than 70, had that level of I.Q. prior to turning 22, and that she suffered some other physical or mental disability which limited her ability to function in the workplace. It is clear that plaintiff suffered from disabilities which limited her ability to function in the workplace in that she could no longer work as a custodian as she had before. Plaintiff presented a report from a psychologist stating that she had an I.Q. of less than 70 and that her low I.Q. was a lifelong condition. The ALJ stated that he did not accept the psychologist's report because there was evidence in the record that plaintiff consumed too much alcohol and had given less-than-best efforts to other doctors. He did this even though there was no indication from the psychologist that plaintiff had been drinking or giving less-than-best efforts regarding this psychologist's evaluation.

The evidence does not support the ALJ decision to discount the psychologist's report. There is no evidence in the record that the I.Q. test administered to plaintiff was invalid for these or other reasons. The low I.Q. score is consistent with the few school records in evidence and

plaintiff's testimony that she could not read well enough to take a driver's license test. Having reviewed the record, and after considering the briefs and argument of counsel, it is recommended that the Commissioner's motion for summary judgment be denied because the ALJ's decision to discount results from plaintiff's lone I.Q. test was conjectural. As such, the Commissioner's decision was not based on substantial evidence. Additionally, it is the recommendation of the undersigned that plaintiff's motion for summary judgment be granted and that plaintiff be awarded benefits for the closed period of time in question.

## STANDARD OF REVIEW

The court's review is limited to a determination as to whether there is a substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

## FACTUAL AND ADMINISTRATIVE HISTORY

Plaintiff is a fifty-one year old woman, completed eight years of formal education, and has previous work experience as a custodian and housekeeper. (Administrative Record, hereinafter "R.", at 55, 82, 100.) Plaintiff can read and write. (R. 161) Plaintiff applied for SSI on February 8, 2002, alleging that she became disabled on January 1, 2002 due to right knee pain. (R. 55, 87) On December 9, 2003, an administrative law judge ("ALJ") held a hearing at which plaintiff, represented by counsel, and a vocational expert testified. (R. 158-70)

2

In his decision, the ALJ found that plaintiff was capable of performing sedentary work through November 4, 2003, the date at which she turned fifty years of age, but that after that date, based on her age, education, and residual functional capacity ("RFC"), she was disabled. (R. 20-21) The Appeals Council denied plaintiff's request for review. (R. 4) Plaintiff then filed this civil action challenging the Commissioner's decision that she was capable of performing sedentary work until November 4, 2003.

On May 13, 2002, Thomas Dobyns, M.D., evaluated plaintiff at the request of the Commissioner. (R. 114) Plaintiff's main complaint was of right knee pain, but she also complained of gallstones. (R. 114) Dr. Dobyns reported that plaintiff was well-developed and well-nourished. (R. 115) Plaintiff walked with a limp. (R. 115) A physical examination was unremarkable excepting that plaintiff had a slightly enlarged liver. (R. 116) Additionally, plaintiff's right knee was slightly warm and painful on motion. (R. 116) An x-ray of the right knee showed marked medial compartment joint space narrowing. (R. 116) Dr. Dobyns diagnosed early bilateral osteoarthritis, and arthrosis, worse on the right. (R. 117) Dr. Dobyns also stated that plaintiff had been an alcoholic for many years. (R. 117) Dr. Dobyns noted that plaintiff had alcoholic cirrhosis and ascites, apparently under moderately good control. (R. 117)

On November 7, 2002, Hal C. Clark, M.D., evaluated plaintiff for her liver disease at the request of the Commissioner. (R. 119) Dr. Clark reported that plaintiff had been treated for alcoholic liver disease in 1999, but that plaintiff disputed that she was an alcoholic. (R. 119) Dr. Clark noted that recent lab reports showed variation in her liver enzymes, which might be due to intermittent alcohol consumption. (R. 119) Dr. Clark stated that a review of plaintiff's symptoms was significant for dysuria, insomnia, dyspnea, abdominal pain, night sweats, and ankle swelling. (R. 120) Dr. Clark stated that plaintiff's abdomen was not tender and her liver

3

was not palpable. (R. 121) Plaintiff stated that she could only sit for one-half hour, which Dr. Clark suggested was an exaggeration since her arthritis would not interfere with sitting. (R. 121)

On November 23, 2002, Barry S. Hensley, Ph.D., a psychologist, evaluated plaintiff at the request of her attorney. (R. 105) Dr. Hensley reported that plaintiff lost her driver's license because of a DUI in February 2002. (R. 105) Dr. Hensley reported that plaintiff achieved a verbal I.Q. score of 64, a performance I.Q. score of 64, and a full-scale score of 61. (R. 106) Dr. Hensley stated that plaintiff has a history of alcohol abuse, but that she denied that she did. (R. 107) Dr. Hensley stated that plaintiff was vocationally disabled. (R. 108) He opined that plaintiff's functioning fell within the mildly mentally retarded classification. (R. 108)

## ANALYSIS

The relevant time period of inquiry for this decision is the period between February 8, 2002, plaintiff's application date, and November 4, 2003, the date upon which the Commissioner determined that plaintiff became disabled.[1] Until that date, the Commissioner determined that plaintiff was capable of performing sedentary work. (R. 19)

Plaintiff's sole argument is that the ALJ erred in finding that plaintiff did not suffer from a severe mental impairment or meet Listing 12.05C. In order to be presumed disabled under Listing 12.05C, a claimant must establish the following:

> Mental Retardation and Autism: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22) . . . .

---

[1] Here, claimant "gridded out." See Rangel v. Commissioner, 138 F. Supp. 2d 921, 928 (E.D. Mich. 2001). Even though claimant's functional capacity remained the same as she aged, when she reached the age of fifty, the medical vocational guidelines directed the finding of disability when she reached the age of fifty. As such, this case focuses on the period between when she filed her application and her fiftieth birthday.

4

>> The required level of severity for this disorder is met when
>> the requirements in A, B, C, or D are satisfied . . . .
>
>> C. A valid verbal, performance, or full scale IQ of 60 through 70
>> and a physical or other mental impairment imposing additional and
>> significant work-related limitation of function.

See 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05C (2005).

In order to meet a listing, a claimant must show that all criteria contained in the listing are met. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992). Meeting only some criteria for a listing "no matter how severely, does not qualify." Sullivan, 493 U.S. at 530. Listing 12.05C requires a valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other impairment imposing an additional and significant work-related limitation of function. See id.

In this case, plaintiff underwent a vocational, intellectual, and educational evaluation by Dr. Barry S. Hensley. (R. 105) Dr. Hensley administered the Wechsler Adult Intelligence Scale - Third Edition, which indicated that plaintiff's intellectual abilities fall well within the mildly mentally retarded classification. (R. 106) Specifically, Dr. Hensley indicated that plaintiff earned a verbal score of 64, a performance-scaled score of 64, and a full-scale score of 61 and that the scores fell at or below the first percentile. (R. 106) He said that plaintiff's verbal comprehension score was 65, perceptual organization score was 65 and working memory index score was 65, all of which fell in the first percentile. (R. 106-07) Dr. Hensley concluded that plaintiff was mildly mentally retarded, that her retardation appeared to be developmental in nature, and that it occurred prior to age 22. (R. 108) From this, Dr. Hensley concluded that plaintiff was vocationally disabled. (R. 108)

It is clear that plaintiff has achieved a score in the range provided in the listing. However, the issue in this case is whether plaintiff had a *valid* I.Q. in the range provided in the statute. See

5

Smith v. Barnhart, 2005 U.S. Dist. LEXIS 5975, at *10 n.3 (W.D. Va. Apr. 8, 2005). In his decision, the ALJ noted that nothing in plaintiff's school records suggests that she was functioning in the mentally retarded range of activity. (R. 18) Further, the ALJ notes that several physicians who examined plaintiff questioned her effort or suggested that she was exaggerating the extent of her medical problems. (R. 18) These records include indications that:

(1) although plaintiff told Dr. Clark that she could only sit for one-half hour, Dr. Clark suggested that this was an exaggeration since her arthritis would not interfere with her sitting (R. 121);

(2) that Dr. Clark noted that plaintiff was "marginally cooperative and gave a poor effort during the interview" (R. 121);

(3) that Dr. Dobyns noted that both he and his nurse smelled alcohol when plaintiff was examined (R. 115); and

(4) that the claims representative who had interviewed plaintiff reported that she was "obviously inebriated" and that the "smell of alcohol was strong. [Plaintiff] had trouble thinking and talking." (R. 64)

Additionally, the ALJ noted that he questioned Dr. Hensley's findings because plaintiff's school records show poor grades but do not indicate either an I.Q. of 70 or less or a failure to obtain literacy / communicate in English. (R. 18) It is clear that the ALJ is allowed some leeway to evaluate other evidence when determining the validity of an I.Q. score. The word "valid" in the regulation would be superfluous otherwise. Where an I.Q. score is inconsistent with the remainder of evidence in the record on the claimant's daily activities and behavior, it need not be conclusive proof of mental retardation. See Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) (rejecting a claim under listing 12.05C where the claimant's I.Q. score of 69 was inconsistent with evidence that claimant had a two-year college associate's degree, was enrolled

in a third year of college as a history major, and had worked in various technical jobs such as administrative clerk, statistical clerk, and algebra teacher).

Here, the ALJ rejected Dr. Hensley's findings because of plaintiff's ongoing use of alcohol and her less-than-best efforts as noted be her treating physician. (R. 18) The problem with the ALJ's conclusion, however, is that nothing in Dr. Hensley's opinion indicates that he suspected plaintiff had been drinking at the time he gave her this test. Similarly, Dr. Hensley notes nothing about plaintiff being uncooperative. Even though cases like Popp provide the ALJ a degree of leeway to reject I.Q. tests in situations where they are manifestly inconsistent with the remainder of the record, the evidence is this case does not provide a factual basis to invalidate the lone I.Q. test in the record.

The ALJ concludes that there is nothing in the record that establishes that plaintiff either had an I.Q. of below 70, or failed to attain literacy or an ability to communicate in English before age 22. (R. 18) Although it is clear from the record that plaintiff can communicate in English, it is not clear that she did not have an I.Q. below 70 prior to turning 22. In Branham v. Heckler, the court noted that there are many possible reasons why an adult would not have obtained an I.Q. test early in life, and the absence of an I.Q. test during the developmental years does not preclude a finding of mental retardation predating age 22. See 775 F.2d at 1274. The court held that in the absence of any evidence of change in a claimant's intelligence functioning, it must be assumed that the claimant's I.Q. had remained relatively constant. Id.

Plaintiff points to Turner v. Bowen, 856 F.2d 695, 698-99 (4th Cir. 1989) for the proposition that an IQ test taken later in life does not preclude a finding of earlier retardation. In Turner, the claimant had an I.Q. of 67 and the Fourth Circuit relied on evidence that plaintiff had

7

been unable to read or write at age sixteen even after ten years of schooling to conclude that he had a clear manifestation of retardation before age twenty-two. Id.

Defendant's recitation of Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992), does not compel this court to find to the contrary. In Williams, the court held that a claimant has the burden of showing that deficient intellectual functioning manifested itself during the developmental period prior to age 22. Id. In his testimony before the ALJ, the plaintiff in Williams testified that during his 22 years of employment at a steel drum factory, he had been able to learn new tasks. Id. at 1185. Even though there was no evidence of any traumatic condition that would cause mental retardation to spring into existence at an adult age, the ALJ found that it was possible that the claimant had "suffered a decrease in his intellectual ability recently due to his marked reduction in activity." Id.

There is a significant amount of evidence in the record supporting Dr. Hensley's opinion that plaintiff had an I.Q. below 70 prior to her 22nd birthday. For instance, although the evidence as to plaintiff's school records is limited, there is evidence that plaintiff failed numerous subjects in the 1969 school year. (R. 101) Further, records from the 1968-69 school year indicate that plaintiff failed art, business, arithmetic, and typing and that she performed poorly in other classes. (R. 100) Plaintiff testified that she could not take a written test for a driver's license, and had to have the questions read to her. (R. 166) There is no indication that plaintiff learned any complex skill after age 22 in her career as a custodian. Similarly, there is no indication of any traumatic injury that would result in a decrease in plaintiff's I.Q. after age 22. Given this evidence, and the testimony of Dr. Hensley that plaintiff's mental retardation was a life-long condition, the court finds plaintiff has met this requirement under listing 12.05C.

8

As the parties agree that plaintiff had met the final prong under listing 12.05C, that she had "a physical or other mental impairment imposing additional and significant work-related limitation of function," the ALJ erred when he determined that plaintiff failed to meet the requirements of § 12.05C.

## **CONCLUSION**

The ALJ's conclusion that Dr. Hensley's I.Q. test was invalid was speculative and not supported by anything in the record of Dr. Hensley's examination. As such, there is no basis other than conjecture to reject the results of Dr. Hensley's test. Considering those scores to be valid, it is appropriate to award benefits to plaintiff for the period February 8, 2002 to November 4, 2003 under 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05c (2005). As such, defendant's motion for summary judgment is denied and plaintiff's motion for summary judgment is granted. The final decision of the Commissioner is reversed with judgment in favor of plaintiff. The Commissioner shall compute and award appropriate benefits to plaintiff for the closed period of February 8, 2002 to November 4, 2003.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

**ENTER:** This 9th day of August, 2005.

_____
Michael F. Urbanski
United States Magistrate Judge